# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 6813 | **DATE** | 5/22/2003 |
| **CASE TITLE** | Clarence Hayes vs. Lamark Carter, Warden, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

## DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Petitioner's Habeas Petition [1-1] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| ✓ | Notified counsel by telephone. | | | 19 |
| ✓ | Docketing to mail notices. | MAY 2 3 2003 | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| RT/ea | courtroom deputy's initials | FD-7 FILED FOR DOCKETING 03 MAY 22 PM 4: 09 U.S. DISTRICT COURT | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

Notated: CDV

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DOCKETED

MAY 2 ? 2003

CLARENCE HAYES,                    )
                                   )
                Plaintiff,       )          Case No. 98 C 6813
      v.                    )
                                   )
LAMARK CARTER, Warden, et al.,     )          Judge Joan B. Gottschall
                                   )
                Defendants.     )

## MEMORANDUM OPINION AND ORDER

In 1986, Clarence Hayes was convicted of first-degree murder and six related counts of armed robbery following a jury trial in the circuit court of Cook County. He is currently serving a sentence of natural life in prison. His *pro se* petition for a writ of habeas corpus raises thirteen grounds: (1) exclusion of lineup identification testimony based on insufficiency of the arrest warrant; (2) improper admission of evidence concerning remarks by the assailant to bystanders; (3) improper references to the family of the deceased; improper prosecutorial comment and/or admission of evidence concerning (4) the police search for Hayes, (5) Hayes's failure to "turn himself in," and (6) the resulting need for an arrest warrant; improper admission of (7) testimony that six witnesses did not identify persons other than Hayes, (8) details concerning the witness identifications, and (9) evidence suggesting prior criminal conduct; (10) cumulative effect of improper evidence and comment; (11) erroneously requiring the defense to turn over its investigator's notes; (12) improper use by the State of the grand jury as a discovery device without reciprocal discovery for the defense; and (13) ineffective assistance of trial and appellate counsel. Hayes requests an evidentiary hearing in the alternative. The State opposes the petition on a variety of procedural and substantive grounds.



For the reasons set forth below, Hayes's petition for habeas corpus is denied.[1]

## I.    Background[2]

At Hayes's trial, the State introduced the testimony of four of the armed robbery victims and of two bystanders. Roger Nelson, the murder victim's son, testified that he and his fiancee, Sandra Wissink, attended church services on March 17, 1985, with his mother, Marion Nelson, and his father, Ronald Nelson. After the church service, the Nelson family lingered for 10 or 15 minutes to talk to the pastor and his wife. At approximately 1:45 or 1:50 p.m., the Nelsons and Sandra left the church and walked across the street to the fenced lot where they had parked their cars. As they walked toward their cars, a man holding a gun approached them and ordered them into Ronald Nelson's car. The gunman, whom Roger identified as the defendant, wore a long dark coat, a baseball cap with a Playboy insignia and a light-colored shirt.

The gunman demanded their money. After the men handed the assailant their wallets and the women gave him their purses, the assailant threatened to kill someone if he discovered they were holding out on him. After approximately five minutes, Donna Van Zanten, the pastor's wife, and her son, Kent, walked out of the church toward the parking lot. The assailant ordered them into the car and they handed the assailant their purse and wallet, respectively. After another five minutes or

---

[1]On November 14, 2002, petitioner moved for leave to supplement his original habeas application with an additional argument based on the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Despite the fact that the petitioner failed to comply with Local Rule 5.3(b) by presenting this motion to the court, the court nonetheless considered the argument raised by Hayes in that motion. Because petitioner was sentenced prior to June 26, 2000 (the date *Apprendi* was decided), *Apprendi* does not apply to him. *Curtis v. United States*, 294 F.3d 841, 844 (7th Cir. 2002) (rule established in *Apprendi* is not retroactive on collateral review).

[2]The background facts are taken from the Illinois Supreme Court's opinion in *People v. Hayes*, 564 N.E.2d 803, 808-11 (Ill. 1990).

so, the assailant grabbed Ronald Nelson's lapel and saw that he had a checkbook in his inside pocket. Ronald said that he did not give him the checkbook because he did not think he would be able to use it. The assailant called Ronald a "god damn lying bastard" and fatally shot him in the abdomen. The assailant then stood up, clutched the purses to his chest, and jogged away. Sandra Wissink, Donna Van Zanten and Kent Van Zanten also testified at trial, reciting the same basic story.

Larry Stewart and Harold Smith, two bystanders, testified that they were working on a car near the parking lot when they heard arguing and a loud "bang like" noise. They testified that they saw a man with a gun, clutching some purses, running toward them. As the man ran by, he told the witnesses, "You brothers, you be cool because you know them was honkies over there." They then heard Roger, whom Harold knew from the church, shout to them that the man on the run had just "shot my Dad."

Several of the witnesses testified regarding their involvement in the subsequent investigation of the incident. Roger Nelson testified that he spent between six and seven hours after the shooting at the police station with Sandra Wissink and the Van Zantens, looking at pictures, but did not identify any of the photos as the assailant. Kent Van Zanten testified that he looked through at least five books of photographs the day of the shooting in an effort to find the assailant. He testified that a few days after the shooting, he and his mother spoke with a police artist, who prepared a composite sketch. Kent testified, however, that the sketch did not look like the assailant. Donna Van Zanten testified that she and her son looked with the police for the assailant on the day of the crime and that Detective McWeeny of the Chicago police department showed her photo arrays on three separate occasions, but that she was unable to identify anyone in the photos.

McWeeny testified for the State that he brought Larry Stewart, one of the bystanders, to Area

3

1 Violent Crimes to look at photo books on March 29, 1985. Apparently, all previous photo arrays had been collected from Area 2 Violent Crimes. Stewart looked through a number of books and picked out Hayes's photo. McWeeny then obtained a more recent photo of the defendant and assembled a photo array for the other witnesses. According to McWeeny, Harold Smith and Donna and Kent Van Zanten identified the defendant's photograph from this array.

McWeeny testified that he went to Hayes's home and asked an elderly man if he could speak to Hayes. The officer left his business card and asked the man to have Hayes call him when he got home. Over defense objection, the officer testified that after making approximately six attempts to locate the defendant at his parents' home, the police obtained an arrest warrant and formed a stakeout at a currency exchange. The stakeout continued for four days until Hayes was apprehended on April 14, 1985.

The first lineup occurred in the early afternoon of the same day and was viewed by Donna and Kent Van Zanten, Harold Smith, and Larry Stewart. McWeeny testified that each witness identified Hayes as the assailant. A second lineup was conducted later that evening, after Roger Nelson and Sandra Wissink drove to Chicago from Michigan to view the lineup. McWeeny testified that Roger and Sandra each identified Hayes from the lineup as the assailant. All six witnesses positively identified Hayes in court and testified at trial regarding their identification of Hayes in the photo array and the lineup.

McWeeny was questioned by defense counsel on cross-examination regarding apparent discrepancies between the composite sketch drawn up by the police artist and the defendant's appearance. McWeeny testified that the sketch of the offender included a description of the offender's face as "pockmarked." McWeeny acknowledged that the defendant's arrest report did not

4

state that the defendant had "pockmarks." On redirect, Detective McWeeny explained that Larry Stewart told him that the assailant had little holes in his face around his beard. Detective McWeeny, who had a pockmarked face, asked Stewart if the indentations were "like mine," and Stewart said "kind of." It was on this basis that McWeeny characterized the assailant as "pockmarked" in the composite description. McWeeny testified that the term "pockmark" was brought to Stewart's attention only after Stewart told McWeeny that the assailant's face had indentations.

Edward Matthews, an investigator for the public defender's office, testified on Hayes's behalf. He testified that on April 10, 1986, he and Hayes's trial counsel spoke to Harold Smith at Smith's home. According to Matthews, Harold would not allow the conversation to be recorded, but stated that he could not identify anyone when he viewed the lineup. Matthews testified that Smith told them that his attention was drawn to the defendant at the lineup because he was the tallest, was wearing a white shirt, and because there were handcuffs hanging on the wall directly behind him. According to Matthews, Smith stated that he did not identify the defendant in a photo array or the lineup until after he spoke with Larry Stewart and another nontestifying witness.

The parties then stipulated that Terry Merriweather, who bore some resemblance to Hayes, was arrested after he was found near a currency exchange. In addition, a man named Everette Bakion was arrested and subsequently released. Bakion was wearing a long coat and had a Playboy bunny cap in his pocket at the time of his arrest. After the defense rested and the parties delivered closing arguments, the jury found Hayes guilty of murder and armed robbery. The court denied Hayes's motion for a new trial, imposed 30-year concurrent sentences on the six robbery convictions, and sentenced him to death on the murder conviction.

On direct appeal to the Illinois Supreme Court, Hayes raised 25 issues, including all but the

5

last ground raised in the present habeas petition. The court affirmed all seven convictions and the sentences for armed robbery, but vacated the death sentence and remanded for a new sentencing hearing, at which Hayes was sentenced to natural life in prison. Hayes filed a *pro se* petition for state post-conviction relief, alleging ineffective assistance of trial and appellate counsel. Hayes also filed a motion for appointment of counsel other than the Cook County public defender. The trial court nevertheless appointed that office to represent Hayes and, following argument, denied the petition. On appeal, represented by a private attorney, Hayes argued that the public defender rendered ineffective assistance in the post-conviction proceedings. The Illinois Appellate Court rejected this argument and affirmed the denial of post-conviction relief.

## II.   Standard of Review

Under 28 U.S.C. § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act ("AEDPA"), the court may not grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court proceedings unless the state court decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Alvarez v. Boyd*, 225 F.3d 820, 824 (7th Cir. 2000).

As a threshold matter, Section 2254 requires a habeas petitioner to exhaust the remedies available in state court prior to pursuing federal habeas relief. 28 U.S.C. § 2254(b)(1)(A). The statute requires the state prisoner to "give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This rule "reduces friction between the state and federal court systems by avoiding

the 'unseemliness' of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *Id.* at 845 (internal brackets omitted). The State concedes that Hayes has exhausted his claims.

### III.    Procedural Default:  Grounds 13, 2, 5, 8 and 11

The State argues, however, that several of Hayes's claims are procedurally defaulted. To avoid a holding of procedural default for each of his claims, Hayes must have presented "each claim fully and fairly to the state courts." *Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir. 1999) (citing *Verdin v. O'Leary*, 972 F.2d 1467, 1472 (7th Cir. 1992)). Fair presentment requires Hayes to "give the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Id.* For a constitutional claim to be fairly presented, "both the operative facts and the 'controlling legal principles' must be submitted" for the state court's review. *Id.* (quoting *Picard v. Connor*, 404 U.S. 270, 277 (1971)).

Even if Hayes has raised all of his habeas claims in state court, this court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). This doctrine bars "federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Id.* at 729-30.

Where a petitioner has procedurally defaulted, this court may review the underlying claims only if the habeas petition "shows cause for failure to raise them at the appropriate time and actual prejudice which resulted from such failure." *Rodriguez*, 193 F.3d at 917 (citing *Wainwright v. Sykes*, 433 U.S. 72, 91 (1977)).  Absent this showing, "a defaulted claim is reviewable only if refusal to

consider it would result in a 'fundamental miscarriage of justice,' that is, where 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Id.* (citing *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)). This would require Hayes "to show that it is more likely than not that no reasonable juror would have convicted him." *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 329 (1995)); *see also Buelow v. Dickey*, 847 F.2d 420, 427 (7th Cir. 1988) (holding that court "may set aside the cause-and-prejudice test and permit a habeas petition if, due to a fundamentally unjust trial, an innocent defendant was convicted").

First, the State contends that Hayes defaulted his ineffective assistance of counsel claims by failing to present them to the Illinois Appellate Court or the Illinois Supreme Court on appeal from the denial of his petition for post-conviction relief. Hayes first raised his ineffective assistance claims in his state post-conviction petition. However, on appeal from the denial of that petition, he did not raise those alleged deficiencies. Rather, he claimed only that he had been denied the effective assistance of counsel during the post-conviction proceedings.

Hayes's claims of ineffective assistance of trial and appellate counsel are directly foreclosed by applicable Seventh Circuit precedent. In *Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir. 1999), the court held that a habeas petitioner had procedurally defaulted a claim of ineffective assistance of trial counsel by failing to raise the issue on appeal from the denial of his Illinois post-conviction petition. As here, the petitioner had argued in his post-conviction petition that his trial counsel erred by, among other things, failing to investigate and interview potential alibi witnesses, but had argued on appeal of that petition only that his post-conviction, not trial, counsel was ineffective. *Id.* "[B]y changing the basis of his argument between the trial court and appellate court, [petitioner] did not fairly present the question of ineffective assistance of trial counsel to the Illinois

8

Appellate Court," the court concluded. *Id.* In *Spreitzer v. Schomig*, 219 F.3d 639, 645, 647 (7th Cir. 2000), the court, after finding procedural default on the same ground as in *Howard*, expressly rejected the petitioner's argument that he was not required to raise on appeal his ineffectiveness claim because his post-conviction counsel's failure to append affidavits to the petition had rendered such an effort futile. Because Hayes failed to raise any argument regarding the denial of effective assistance of trial and appellate counsel before the Illinois appellate court, he has defaulted those claims.

Hayes can overcome his procedural default by showing either: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. It is tempting to attribute Hayes's default to the absence of affidavits in the record: his appellate counsel apparently saw the writing on the wall and chose not to waste the appellate court's time with claims he knew would be rejected. *Cf. Smith v. Murray*, 477 U.S. 527, 536 (1986) (explaining that the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy"). But this theory of "cause" is inconsistent with the Seventh Circuit's holding in *Spreitzer*. Hayes had a duty to raise these claims on appeal at penalty of default, no matter how futile such effort would have been. The only other "cause" suggested by Hayes's submissions is the ineffectiveness of his post-conviction appellate counsel. Because criminal defendants generally have no constitutional right to counsel in collateral proceedings, because Hayes's lawyer on post-conviction appeal was retained rather than appointed by the court, and because an ineffective assistance of counsel claim can excuse procedural default only if it rises to federal constitutional dimensions, this argument goes nowhere. *Coleman*,

501 U.S. at 752-54; *Howard*, 185 F.3d at 725.

Hayes also seeks to take advantage of the "fundamental miscarriage of justice" exception. A miscarriage of justice occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup*, 513 U.S. at 327 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* The erroneously omitted evidence alleged by Hayes includes:

> (1) six alibi witnesses, who testified before the grand jury that Hayes was at home watching a basketball game when the attack occurred;
>
> (2) an additional alibi witness, Arnold LeGrand, who, unlike the other six, was not related to Hayes;
>
> (3) reports in the community and press that the offender was a vagrant who frequented a soup kitchen in the neighborhood (Hayes does not fit this description);
>
> (4) Hayes's brother, Donnell, whose face (unlike Hayes's) is pockmarked, was arrested for the offense but released;
>
> (5) Hayes's photograph was on file at the 111th Street Police Station;
>
> (6) expert testimony concerning the unreliability of eyewitness identifications;
>
> (7) adequate cross-examination of eyewitnesses concerning discrepancies between their initial descriptions of the assailant and Hayes's actual appearance, relating to complexion, a scar, age, build, and height; and
>
> (8) Hayes did not harbor racial animosity toward white people.[3]

---

[3]Hayes also argues that trial counsel should have moved for a substitution of judges upon learning that the trial judge had told Hayes in 1980 that no one would be able to help him if Hayes ever returned to his courtroom. Hayes does not explain how such a substitution would have affected the evidence presented to the jury. Presumably, Hayes believes that an unbiased

As described above, the case against Hayes boiled down to six eyewitness identifications. The crimes occurred in broad daylight and the assailant's face was uncovered. Two eyewitnesses observed the assailant for ten minutes, two for five minutes, and two just briefly as he fled. Eyewitness testimony is notoriously unreliable, but the chance that all six of these witnesses made the same error under these circumstances seems slight. Indeed, the Illinois Supreme Court described the identification evidence as "overwhelming." *Hayes*, 564 N.E.2d at 822. On the other hand, there was testimony to the effect that the lineup was suggestive and that one of the six testifying eyewitnesses, Harold Smith, did not identify Hayes in the photo array or lineup until after he had spoken to two other witnesses. Of two other suspects arrested for the offense, one apparently bore some resemblance to Hayes and the other was wearing a long coat and had a Playboy bunny cap in his pocket at the time of his arrest. (Recall that the assailant wore a similar coat and cap during the attack.) It is against this backdrop that one must evaluate the probable impact of the omitted evidence.

Much of the omitted evidence appears to be of very limited probative value. Reports in the community that the assailant was a vagrant seem especially weak. Although it is possible, of course, that investigation into these reports might have yielded fruit, the reports themselves appear to have been unsubstantiated and were likely inadmissible hearsay. That McWeeny and some of the witnesses may have overlooked Hayes's photograph among the scores of photographs they reviewed at the 111th Street station—Roger Nelson testified that he looked at photographs for between six and

---

judge would have made more favorable evidentiary rulings—*e.g.*, excluded the "honkies" comment, details concerning the victims, and references to Hayes's alleged failure to "turn himself in."

seven hours; Kent Van Zanten testified that he looked through at least five books—says little about the reliability of the witnesses' identification of Hayes when they later saw his photograph in an array or when they saw Hayes himself in the lineups and at trial. If the expert hypothesized by Hayes would have testified only as to the general unreliability of eyewitness identifications, then such testimony probably would not have been admissible. *People v. Enis*, 743 N.E.2d 1, 19-20 (Ill. 2000). But even if such testimony would have been admitted and would have established that an individual identification in these circumstances carries a high error rate, it is seems unlikely that such testimony could have shown that the probability of all six of these witnesses making the same error was substantial. Finally, Hayes's lack of racial animosity would not have gone far toward establishing his innocence. The "brothers you all be cool" and "honkie" comments, while no doubt inflammatory, could be viewed as appeals to racial solidarity or the presumed racism of the assailant's audience, rather than as a manifestation of the assailant's own attitudes. Introducing character evidence of the type described by Hayes likely would have only served to underscore the racial aspect of the crime and may well have opened a can of worms about Hayes's past. Given McWeeny's testimony concerning the source of the term "pockmarked" in the description of the assailant—it appears that Stewart, one of the two witnesses who saw the assailant for the shortest period of time, merely assented to the term—the fact that Hayes's brother had a pockmarked face would not have been particularly strong exculpatory evidence. For the same reason, cross-examination of the witnesses on this issue would likely have had little impact. On the other hand, a family resemblance between Hayes and his brother could provide an explanation for how all six witnesses could make the same identification error. Lastly, the most troubling omission is the alibi witnesses. It is difficult for the court to assess, at this stage, what impact the testimony of the the alibi

witnesses would have had on the jury. In light of the fact that Hayes was identified by six witnesses, four of whom saw him for five minutes or more in direct sunlight at a distance of only a few feet, the court cannot conclude that it is more likely than not that no reasonable juror would have voted to convict in light of the testimony of the alibi witnesses and the other erroneously omitted evidence. Hayes's thirteenth ground for habeas relief therefore fails.

Next, the State argues that Hayes defaulted grounds two, five, and eight in their entirety, and parts of ground eleven, by failing to raise evidentiary objections at trial and in his post-trial motion. Indeed, the Illinois Supreme Court on direct appeal relied on one or both of these omissions in holding that Hayes waived his right to raise each of these claims. *See Hayes*, 564 N.E.2d at 813, 822, 825, 826-27. This represents an adequate and independent state law ground for the denial of these claims. *See United States ex rel. Miller v. Page*, No. 98 C 4822, 2000 U.S. Dist. LEXIS 6319, at *5 (N.D. Ill. May 5, 2000) (holding that rule requiring timely objection and post-trial motion to preserve an issue is well-established and regularly followed). That the court went on to hold that two of these errors did not rise to the level of "plain error" under Illinois law "does not open up the merits any wider for consideration by the federal court." *Neal v. Gramley*, 99 F.3d 841, 844 (7th Cir. 1996). Nor does the court's alternative holding on the merits of one of these claims affect the sufficiency of the waiver result. *See Prihoda v. McCaughtry*, 910 F.2d 1379, 1384 (7th Cir. 1990) ("[I]n alternative-grounds cases the federal court must respect the procedural basis, so long as the state court says that each ground is sufficient.").

As with his ineffective assistance claims, Hayes can overcome his procedural default by showing either cause and prejudice or a miscarriage of justice. *Coleman*, 501 U.S. at 750. The only plausible "cause" suggested by Hayes's submissions is ineffective assistance of trial counsel. *See*

Pet.'s Traverse/Reply at 5 (citing *Lemons v. O'Sullivan*, 54 F.3d 357, 360 (7th Cir. 1995), in which the court recognized that "[i]neffective assistance of counsel may be considered cause for a procedural default"). However, "a procedurally defaulted ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards v. Carpenter*, 529 U.S. 446, 450-51 (2000). As discussed above, Hayes fails to satisfy the "cause and prejudice" standard for his defaulted ineffective assistance of trial counsel claim. Because Hayes cannot show cause for his failure to raise these trial counsel errors before Illinois state courts, there is no need to examine the prejudice prong.

Again, the only escape hatch for Hayes is the fundamental miscarriage of justice exception. For the same reasons stated above, Hayes has not shown that a "constitutional violation has probably resulted in the conviction of one who actually innocent." *Schlup*, 513 U.S. at 327. At worst, the effect of these errors was to improperly allow the following evidence to go before the jury: (1) the remark of the assailant to the two bystanders; (2) references to Hayes's failure to "turn himself in"; and (3) details concerning the positive nature of the eyewitness identifications. It is unclear how, if at all, the fourth alleged error, the discovery order requiring the defense to turn over its investigator's notes, affected the evidence presented at trial. The discrepancy between Hayes's clear complexion and the police descriptions of the offender as having a pockmarked face was sufficiently obvious and important that the State could reasonably have been expected to investigate the source of the discrepancy and to prepare its witnesses for cross-examination on this issue, even without the benefit of the investigator's notes. These errors, when viewed in light of the strength of the six eyewitnesses' testimony, do not persuade the court that a fundamental miscarriage of justice

occurred. The court, therefore, rejects grounds two, five, and eight in their entirety, and parts of eleven (based on due process, work-product doctrine and the Fifth Amendment), as defaulted.

## IV. Merits

### A. Ground One: Exclusion of Lineup Identification Testimony Based on Lack of Probable Cause For Arrest Warrant

Hayes first alleges that he was arrested in violation of the Fourth Amendment to the U.S. Constitution because his arrest warrant was issued on the basis of a complaint that failed to show probable cause. Hayes argues that on April 12, 1985, a police detective "signed an unsworn complaint for attempt robbery naming the Petitioner Clarence Hayes as the offender." (Pet.'s Reply Resp.'s Answer at 12.) That same day, the detective appeared before a judge and obtained an arrest warrant for Hayes. Hayes claims that "[n]either the complaint nor the warrant stated any facts upon which probable cause could be determined." (*Id.*) Hayes argues that because the warrant failed to show probable cause, he was wrongfully arrested on April 14, 1985. Therefore, he argues, any lineup identification testimony (which was only possible because he was arrested) should have been excluded as fruit of the poisonous tree.

In *Stone v. Powell*, 428 U.S. 465, 494 (1976), the Supreme Court established a general rule that criminal defendants may not seek collateral review of Fourth Amendment exclusionary rule claims under § 2254 if they received "an opportunity for full and fair litigation of" their Fourth Amendment claims in state court. According to the Seventh Circuit, *Stone* merely recognized "a very narrow exception to the general rule that a habeas petitioner may not bring Fourth Amendment claims." *Turentine v. Miller*, 80 F.3d 222, 225 (7th Cir. 1996). The Seventh Circuit has consistently held that "a claim is *Stone*-barred if petitioner simply argues that the state court made a mistake in

applying Fourth Amendment law." *Id.* at 225-26. "[H]abeas review of Fourth Amendment claims is reserved for instances where the state court made an egregious error (e.g., failed to apply Supreme Court precedent directly on point after the argument was clearly presented), thus effectively depriving the petitioner of the ability to vindicate his federal rights in state court." *Id.* at 226.

Thus, Hayes's claim must be dismissed unless Hayes can show that he did not in fact receive such an opportunity in state court. Although the Supreme Court has not defined "opportunity for full and fair litigation," the Seventh Circuit has held that such an opportunity has been provided when: (1) the petitioner has "'clearly informed the state court of the factual basis for that claim and has argued that those facts constitute a violation of . . . [his] fourth amendment rights and (2) the state court has carefully and thoroughly analyzed the facts and [(3)] applied the proper constitutional case law to the facts.'" *Weber v. Murphy*, 15 F.3d 691, 694 (7th Cir. 1994) (quoting *Pierson v. O'Leary*, 959 F.2d 1385, 1391 (7th Cir. 1992)).

In determining that the warrant was supported by adequate probable cause, the Illinois Supreme Court observed that the complaint for the arrest warrant was signed and sworn to by Detective McWeeny,[4] and alleged that Hayes:

> [C]ommitted the offense of attempt armed robbery in that he with the intent to commit the offense of armed robbery pointed a gun at Lavergne McDonald and demanded money from the cash register of Fortenberry Liquors which constitutes a substantial step toward the commission of armed robbery.

*Hayes*, 564 N.E.2d at 819.[5] The supreme court determined that the complaint supported a finding

---

[4]Hayes appears to dispute that the complaint was sworn. However, this court must accept the state court's version of the facts, absent Hayes's showing to the contrary by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Hayes has failed to meet this burden.

[5]On the same day that Ronald Nelson was killed, there was an attempted robbery at the Fortenberry Liquor store. Lavergne McDonald, a cashier at the store, identified Hayes as the

of probable cause, noting that it contained the name of the accused, the offense charged, the time and place of the offense, and the signature and oath of the complainant as required by Illinois law. *Id.* Furthermore, the court noted that even if the complaint on its face did not provide facts that supported probable cause, the trial judge comported with Illinois law by conducting an independent examination of the facts, including an examination of the complainant under oath. *Id.*

Finally, the Illinois Supreme Court relied on *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560 (1971), to come to its decision. That case held that the Fourth Amendment requires that "the judicial officer issuing . . . a warrant be supplied with sufficient information to support an independent judgment that probable cause exists for the warrant." *Id.* at 564. The Illinois Supreme Court in this case concluded that the trial judge sufficiently made such an independent judgment, based on the complaint and the judge's examination of the complainant under oath.

The court recognizes that the merits of Fourth Amendment claims rarely come before a federal district court reviewing a habeas petition. *Turentine*, 80 F.3d at 225-26. However, in light of the unusual facts of the present case, the court must conclude that the otherwise low *Stone* standard has not been met; Hayes has *not* been provided with an opportunity for full and fair litigation of his probable cause claim. There is no record of what transpired between Officer McWeeny and the judge who ultimately determined that there was probable cause to arrest Hayes.[6]

---

would-be robber.

[6]The court is puzzled by the fact that the arrest warrant is based on the attempted robbery of the liquor store and not the murder of Mr. Nelson. According to the facts as recited by the Illinois Supreme Court in *Hayes*, the warrant was issued on April 12, 1985. However, Ms. McDonald, the cashier at the liquor store, did not identify Hayes until two days later when she picked Hayes out of a lineup. While it is possible that the cashier identified Hayes as the perpetrator prior to

While it is true that Hayes presented his argument both to the trial court (in the form of a motion to suppress) and the Illinois Supreme Court on appeal, Hayes had no meaningful "opportunity" to press his claim given that there was no record of any kind upon which Hayes and the state courts could rely. Based on Supreme Court precedent in analogous contexts, the court concludes that the Constitution requires that there be some type of record – be it recorded testimony, contemporaneous notes, findings of fact, or some other means – upon which a court can review the basis for the issuance of a warrant. *Cf. Griffin v. Illinois*, 351 U.S. 12 (1956) (indigent defendant has a constitutional right to a free record of his trial proceedings for purposes of appeal); *Boykin v. Alabama*, 395 U.S. 238 (1969) (record must exist so that voluntariness of guilty plea can be reviewed); *United States v. Tupler*, 564 F.2d 1294, 1298 (9th Cir. 1977) (it is constitutionally essential that "an adequate factual basis [for probable cause]. . . be established"). "The substantive right created by the requirement of probable cause is hardly accorded full sweep without an effective procedural means of assuring meaningful review of a determination by the issuing magistrate of the existence of probable cause." *Christofferson v. Washington*, 393 U.S. 1090 (1969) (Brennan, J., dissenting from denial of certiorari). Based upon the facts of this case, where there is no record of the facts, if any, upon which the issuance of the warrant was based, the court holds that the *Stone* standard has not been satisfied.

This finding, however, does not end the court's inquiry. As the Seventh Circuit has recently stated in the context of a habeas "harmless error" analysis, a petitioner is not entitled to relief based upon a state court's unreasonable application of federal law absent a showing that the constitutional

---

the date of the arrest warrant, the record does not reflect any prior identification of Hayes by Ms. McDonald. This discrepancy highlights the necessity of having some kind of record of what was told to the judge in order for a reviewing court to evaluate the probable cause determination.

error caused his custody. *Aleman v. Sternes*, 320 F.3d 687, 690 (7th Cir. 2003). "Nothing in the AEDPA suggests that it is appropriate to issue writs of habeas corpus even though any error of federal law that may have occurred did not affect the outcome." *Id.* Even assuming that Hayes was arrested without probable cause, Hayes cannot win on this claim. If the arrest was invalid, then the fruits of that arrest – the lineup identification by the six witnesses – would be suppressed. However, the lineup identification was only one component of the identification evidence proffered by the State. Prior to Hayes' arrest, four of the eyewitnesses picked Hayes' photo out of photo book (Larry Stewart) or out of a photo array (Harold Smith, Donna Van Zanten, Kent Van Zanten). That evidence, even assuming there was no probable cause for an arrest, would not have been excluded. *United States v. Crews*, 445 U.S. 463, 476 (1980) (exclusionary rule does not "reach backward to taint information that was in official hands prior to any illegality). In addition, the in-court identification testimony by all six eyewitnesses would not have been excluded as a fruit. *Id.*, 445 U.S. at 471-72. In light of the strength of the other identification evidence, the court cannot conclude that, even if successful, Hayes' exclusionary claim would have effected the outcome of the trial or, ultimately, his custody. *Aleman*, 320 F.3d at 690. In light of this, Hayes's claim based on the exclusionary rule fails.

**B.      Ground Three: Comments Regarding the Victim's Family**

Hayes also claims that he was denied a fair trial due to "evidence and comments about the family of the murder victim" during opening and closing arguments. (Pet.'s Reply Resp.'s Answer at 3.) He contends that these comments were not relevant to his guilt or innocence, but were intended only to "inflame the jury's passion and prejudice" against him. (*Id.*) The family members to whom the State referred in its opening and closing arguments were in fact victims of the robbery.

The Illinois Supreme Court noted that courts condemn the introduction of otherwise irrelevant information about a crime victim's personal traits or familial relationships at a criminal trial. *Hayes*, 564 N.E.2d at 825. With this in mind, the court then concluded that "[s]ome reference to the victim's family during the trial was necessary and inevitable to explain the circumstances of the crime." *Id.* at 826. On the other hand, the court also concluded that "the prosecutor did exceed the boundaries of fair comment when he informed the jury that the victim was a college professor with a doctorate, that [the victim's son] was a seminary student at the time of the crime and that [the victim's son] was an ordained minister at the time of the trial." *Id.* However, the court determined that these comments were made by the prosecutor in an incidental, nonprejudicial manner and did not "cause [the jury] to believe that the personal characteristics of the victim or his family members were material to the defendant's guilt or innocence." *Id.* Therefore, the court held that the comments did not deny Hayes a fair trial.

This court cannot conclude that the Illinois Supreme Court's decision was an unreasonable application of federal law. 28 U.S.C. § 2254(d). The leading United States Supreme Court case on the issue of improper prosecutorial comments during trial is *Darden v. Wainwright*, 477 U.S. 168 (1986). The Seventh Circuit, in adhering to *Darden*, follows a two-step course when deciding whether prosecutorial misconduct, including improper comments to the jury at trial, is so egregious that it requires a new trial as a matter of constitutional law. *Whitehead v. Cowan*, 263 F.3d 708, 728 (7th Cir. 2001), *cert. denied*, 122 S.Ct. 927 (2002). First, the court must look at the comments in isolation to determine if they were improper. If they are proper, the analysis ends. If the comments appear improper, the court must then examine the comments in light of the record as a whole to determine whether they deprived the defendant of a fair trial. *Id.* (citing *United States v. Whitaker*,

127 F.3d 595, 606 (7th Cir. 1997)). To make this determination, a court must consider six factors set forth in *Darden*: "(1) whether the prosecutor misstated the evidence; (2) whether the remarks implicate specific rights of the accused; (3) whether the defense invited the response; (4) the trial court's instructions; (5) the weight of the evidence against the defendant; and (6) the defendant's opportunity to rebut." *Id.* (citing *Howard v. Gramley*, 225 F.3d 784, 793 (7th Cir. 2000)).

The Illinois Supreme Court's decision was reasonable in light of *Darden* and *Whitehead*. The court held that some of the prosecutor's references to the victim's family were proper because these family members were victims of the robbery and the comments were "necessary and inevitable to explain the circumstances of the crime." *Hayes*, 564 N.E.2d at 826. However, the court found that the comments that the victim was a college professor with a doctorate, that the victim's son was a seminary student at the time of the crime, and that the victim's son was an ordained minister were likely improper because they were not necessary to show any material fact at trial. Thus, the issue is whether these comments deprived Hayes of a fair trial.

In applying the *Darden* factors, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned. . . . The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (citation and quotation marks omitted). Furthermore, "the most important of the *Darden* factors is the weight of the evidence against the defendant." *Howard*, 225 F.3d at 793. "[S]trong evidence of guilt eliminates any lingering doubt that the prosecutor's remarks unfairly prejudiced the jury's deliberations." *Rodriguez v. Peters*, 63 F.3d 546, 558 (7th Cir. 1995) (quotation marks omitted).

As the Illinois Supreme Court held, there was overwhelming evidence of guilt in that six

21

eyewitnesses identified Hayes as the offender in court. That court also held that "[t]he evidence convincingly established that the witnesses viewed the defendant at the time of the crime under circumstances permitting a reliable identification." *Hayes*, 564 N.E.2d at 828. This evidence eliminates any doubt that the prosecutor's comments may have unfairly prejudiced the jury's deliberations. *See Whitehead*, 263 F.3d at 729 (holding that the *Darden* test was not met on habeas review where the defendant's "numerous confessions, and the physical evidence tying the defendant to the scene of the murder and linking the victim with the car in defendant's possession" provided overwhelming evidence of guilt). The Illinois Supreme Court's decision was reasonable. Therefore, Hayes's third ground for habeas relief fails.

### C.    Ground Four: Police Activities Leading to Hayes's Arrest

Hayes claims next that he was denied a fair trial "by evidence of the steps taken by the police which led to Petitioner's arrest." (Pet.'s Reply Resp.'s Answer at 3.) He points to testimony that the police tried for two weeks, without success, to apprehend him. A detective testified that he attempted six times to locate Hayes at his home, and that he obtained a warrant for Hayes's arrest and set up a stakeout at a currency exchange, where Hayes was arrested four days later. Hayes argues that this testimony denied him a fair trial because it suggested that he intentionally avoided arrest.

The Illinois Supreme Court first observed that the admissibility of evidence is within the discretion of the trial court. *Hayes*, 564 N.E.2d at 820. The trial court determined that the detective's testimony was relevant to describe the circumstances leading to the defendant's arrest. The Illinois Supreme Court held that the trial court did not abuse its discretion. *Id.* The supreme court held that "[t]estimony that the police were unable to find the defendant was part of the

narrative of police activities leading to the defendant's arrest and was intertwined with the circumstances of the arrest." *Id.* The court disagreed with the trial court, however, and held that the evidence was not admissible to show that Hayes consciously avoided arrest. *Id.* at 821. The supreme court noted that "there were no facts from which the jury could validly infer that the defendant knew he was a suspect and consciously avoided the police." *Id.* The court held that the evidence was nonetheless properly admitted as a description of the circumstances of the defendant's arrest. *Id.*

"The admissibility of evidence is generally a matter of state law." *Milone v. Camp*, 22 F.3d 693, 702 (7th Cir. 1994). The Seventh Circuit has held that state court evidentiary rulings "will rarely serve as a proper basis for granting a writ for habeas corpus." *Haas v. Abrahamson*, 910 F.2d 384, 389 (7th Cir. 1990). Federal courts will not review state evidentiary rulings unless a petitioner can demonstrate that there is a denial of fundamental fairness. *Abrams v. Barnett*, 100 F.3d 485, 493 (7th Cir. 1996), *rev'd on other grounds*, 521 U.S. 1114 (1997).

Hayes has failed to show that the admission of the disputed testimony rendered his trial fundamentally unfair. The Illinois Supreme Court held that "[t]estimony that the police were unable to find the defendant was part of the narrative of police activities leading to the defendant's arrest and was intertwined with the circumstances of the arrest." *Hayes*, 564 N.E.2d at 820. While the court sees no justification for the admission of this evidence, the strength of the in-court identification testimony leads this court to conclude that Hayes has failed to show that this evidence denied him a fundamentally fair trial. Therefore, Hayes's fourth ground for habeas relief fails.

### D. Ground Six: Pre-Arrest Silence – Fourth Amendment

In a similar argument to the one he made in ground five, Hayes argues that his Fourth

Amendment right to be free from unreasonable searches and seizures was violated by testimony that he was arrested pursuant to a warrant. Hayes contends that the prosecutor's comments that the police were forced to secure a warrant for his arrest when he did not turn himself in was intended as evidence of his guilt. This claim is supplemented with an argument that evidence of the arrest warrant was irrelevant because a warrant was unnecessary to arrest him on a public street.

The Illinois Supreme Court held that this testimony was not improper. *Hayes*, 564 N.E.2d at 823. It noted that because of the significant delay between the time that Hayes was identified as the offender and the time of his arrest, testimony of an arrest warrant was relevant to account for that delay. *Id.* Like its conclusion regarding ground four, the supreme court held that "[t]he issuance of a warrant for the defendant's arrest was part of the narrative of police activities leading to the defendant's arrest and was intertwined with the circumstances of the arrest." *Id.* The supreme court found it significant that the "prosecutor did not invite the jury to infer that the defendant was guilty because the police obtained a warrant for his arrest. Rather, the testimony . . . was introduced simply to explain the circumstances leading up to the defendant's arrest." *Id.*

As this claim seeks review of a state-court evidentiary ruling, this court may not consider the claim unless Hayes can demonstrate that there is a denial of fundamental fairness. *Abrams*, 100 F.3d at 493. Again, this court disagrees with the Illinois Supreme Court's decision that evidence of the arrest warrant was relevant to explain the two-week delay between the time that Hayes was originally identified as the offender and the time of his arrest. However, despite this, in light of the overwhelming in-court identification testimony, Hayes has failed to show that the evidence of the arrest warrant denied him a fair trial. Therefore, Hayes's sixth ground for habeas relief fails.

### E.    Ground Seven: Eyewitnesses' Viewing of Other People

In this claim, Hayes argues that he was denied a fair trial by the introduction of "remote, irrelevant, and highly prejudicial" testimony that six eyewitnesses viewed pictures of people other than Hayes but made no identification. (Pet.'s Reply Resp.'s Answer at 20.) The Illinois Supreme Court agreed that this evidence was improperly admitted. *Hayes*, 564 N.E.2d at 823-24. "This testimony violated the general rule that a witness, although present in court and subject to cross-examination, may not testify as to statements he made out of court for the purpose of corroborating his testimony given at trial relative to the same subject."[7] *Id.* at 824. However, the supreme court held that the error was harmless, "[i]n view of the overwhelming evidence of the defendant's guilt." *Id.* The court noted that six witnesses identified Hayes in court as the offender and all of those witnesses had identified him in a pre-trial lineup, while four witnesses identified him from a police photo array. *Id.*

It is unclear from the record whether this claim is, in fact, grounded in federal law. Neither Hayes's petition nor his supporting brief cites any constitutional or other federal law. Hayes claims only that he was "denied a fair trial" due to the disputed evidence. (Pet.'s Reply Resp.'s Answer at 20.) In addition, it is unclear whether Hayes fairly presented this claim as a constitutional issue to the state court. In Hayes's brief to the Illinois Supreme Court, he listed the issue as whether he was "denied a fair trial," without mentioning constitutional or federal law. (Resp.'s Answer Ex. A ¶ 4.) *See Scillia*, 193 F.3d at 916 (for a constitutional claim to be fairly presented to a state court, "both the operative facts and the 'controlling legal principles' must be submitted"); *Verdin*, 972 F.2d at

---

[7]The court's holding of trial court error was later abrogated by the Illinois Supreme Court in *People v. Tisdel*, 775 N.E.2d 921 (Ill. 2002) (holding that *Hayes* construed the "statements of identification" exception to the general rule too narrowly).

1475 ("[C]ourts have rejected bare allegations that the defendant was not given a fair trial."). Furthermore, the Illinois Supreme Court's conclusion that the trial court's error was harmless is grounded purely in Illinois caselaw. *Hayes*, 564 N.E.2d at 824. Of course, the Seventh Circuit has held that a federal claim might be fairly presented to a state court if the petitioner "assert[ed] the claim in terms so particular as to call to mind a specific constitutional right; or [] allege[d] a pattern of facts that is well within the mainstream of constitutional litigation." *Verdin*, 972 F.2d at 1473-74. That may be the case here. However, even assuming this claim was fairly presented, Hayes's argument fails on the merits.

Even if the nonidentification testimony was erroneously admitted, this court finds that the admission would constitute harmless error. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (federal habeas courts are to ask whether a trial error "'had substantial and injurious effect or influence in determining the jury's verdict'"); *Aleman v. Sternes*, 320 F.3d 687, 690 (7th Cir. 2003) (holding that *Brecht* survived the passage of the AEDPA). The state supreme court held that the trial court's error was harmless, "[i]n view of the over-whelming evidence of the defendant's guilt," including the fact that "[s]ix witnesses identified the defendant in court as the offender." *Hayes*, 564 N.E.2d at 824. The court agrees. Like the supreme court, this court is not "firmly convinc[ed] . . . that but for the errors, the outcome of the trial probably would have been different . . . ." *Anderson v. Sternes*, 243 F.3d 1049, 1055 (7th Cir. 2001) (concluding that state court's determination of harmless error was reasonable where there was "overwhelming and incontrovertible evidence of defendant['s] guilt"). Hayes's seventh ground for habeas relief fails.

F.    **Ground Nine: Evidence Suggesting Prior Criminal Conduct**

Hayes next claims that he was denied a fair trial when the trial court admitted evidence that

26

allegedly suggested prior criminal conduct by him. At trial, Detective McWeeny testified that he took Larry Stewart to look at photo books at Area 2 Violent Crimes, but that Stewart was unable to identify anyone. The detective testified that he then took Stewart to Area 1 Violent Crimes, where the witness identified a picture of Hayes while looking at photo books. Hayes argues that this testimony informed the jury that he had a history of committing violent crimes.

The Illinois Supreme Court first observed that evidence of prior crimes is improper where its purpose is to demonstrate the defendant's propensity to commit the crime. *Hayes*, 564 N.E.2d at 827. Evidence that a defendant has a criminal history is inadmissible unless it is relevant to show some other material fact, such as identity. *Id.* The court held that the police detective's testimony was not direct evidence of prior criminal conduct, and even if it raised an inference of criminal history in the jurors' minds, "we are not persuaded that this isolated statement was so prejudicial that it deprived the defendant of a fair trial." *Id.* at 828.

As with ground seven, this court is not convinced that Hayes fairly presented this constitutional claim to the state courts. In his petition and supporting brief, Hayes claims that the admission of the disputed evidence denied him a fair trial in violation of his right to due process under the Fifth and Fourteenth Amendments to the Constitution. However, there is no evidence in the record that shows that he raised these constitutional claims before the Illinois Supreme Court. In his brief before the supreme court, he presented the issue as "[w]hether defendant was denied a fair trial by admission of evidence suggesting prior criminal conduct." (Resp.'s Answer Ex. A ¶ 6.) He did not mention any constitutional provisions, as he did with other issues in the same brief. Furthermore, the Illinois Supreme Court did not cite constitutional or federal law in its discussion of this claim. If Hayes did not present his constitutional claims to the state's supreme court, then his

claim is not properly before this court. On the other hand, Hayes may have fairly presented his claim because his argument asserted the claim in terms so particular as to call to mind a specific constitutional right (due process), or alleged a pattern of facts that is well within the mainstream of constitutional litigation. *See Verdin*, 972 F.2d at 1473-74. However, even assuming this claim was fairly presented, Hayes's argument fails on the merits.

Because this claim involves an evidentiary ruling, this court can issue a writ of habeas corpus only if the state court's ruling denied Hayes the right to a fundamentally fair trial. *Abrams*, 100 F.3d at 493. Furthermore, a state's evidentiary ruling "will rarely serve as a proper basis for granting a writ for habeas corpus." *Haas*, 910 F.2d at 389. In the context of "other crimes" evidence, a defendant is denied a fair trial only when the probative value of the other acts is "greatly outweighed by the prejudice to the accused from its admission." *Woodruff v. Lane*, 818 F.2d 1369, 1373 (7th Cir. 1987).

The court cannot conclude that any prejudice resulting from the detective's mention of Area 2 Violent Crimes greatly outweighed the probative value of the comment. The detective's testimony was relevant to the identity of the offender; his mention of the photo arrays was necessary to describe the circumstances surrounding the eyewitness's identification. The detective only briefly mentioned the facility's name; he did not testify that Hayes had prior arrests or that the police department had prior "mug shots" of Hayes. In addition, "the reference was singular and ambiguous, in that it did not indicate that the defendant had a prior criminal record." *Id.* Hayes has failed to show that the trial court's evidentiary ruling denied him a fundamentally fair trial. Therefore, Hayes's ninth ground for habeas relief fails.

## G.    Ground Ten: Cumulative Effect of Errors

Next, Hayes argues that the cumulative effect of improperly admitted evidence deprived him of a fair trial. Among the improperly admitted evidence, Hayes points to testimony that the witnesses had rejected thousands of photos of people other than Hayes, that the identifications were positive, and that the police were forced to obtain an arrest warrant because he would not turn himself in. Hayes argues that this was the only evidence corroborating the witnesses' identifications of him as the offender, and that if it were not admitted, the jury may have found that the identification witnesses were mistaken.

The Illinois Supreme Court held that even if this evidence were improperly admitted, "the cumulative effect of the errors did not deprive the defendant of a fair trial." *Hayes*, 564 N.E.2d at 828. The court pointed to Illinois precedent that holds that "the identification testimony of a single eyewitness is sufficient to sustain a conviction." *Id.* The court noted that all six witnesses' identifications of Hayes were reliable, and that the State had successfully refuted Hayes's "mistaken identity" strategy at trial. *Id.*

This court once again is unconvinced that Hayes fairly presented this constitutional claim to the Illinois Supreme Court. In his brief supporting his appeal to the Illinois Supreme Court, he presented the issue as "[w]hether the cumulative effect of improperly admitted evidence corroborating the State's eyewitness testimony denied defendant a fair trial." (Resp.'s Answer Ex. A ¶ 7.) He did not claim any constitutional violations, as he did in other issues raised in the same brief. Even assuming Hayes fairly presented the claim to the state court by asserting the claim in terms so particular as to call to mind a specific constitutional right, Hayes's argument fails on the merits.

Because this claim involves evidentiary rulings, this court can grant habeas relief only if it finds that Hayes was denied a fundamentally fair trial. *See Abrams*, 100 F.3d at 493. This court cannot hold that Hayes received an unfair trial, in light of the overwhelming in-court identification testimony. Furthermore, the Illinois Supreme Court acted reasonably in concluding that any error was harmless, even applying the *Brecht* standard. *See Anderson*, 227 F.3d at 898 n.3 (an error is harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict") (citing *Brecht*, 507 U.S. at 637). Therefore, Hayes's tenth ground for habeas relief fails.

### H.    Ground Eleven: Discovery Order

In Hayes's next claim, he argues that the trial court's discovery order that certain notes of Hayes's investigator be provided to the prosecution violated the Fifth, Sixth, and Fourteenth Amendments. As discussed in Section III, Hayes has defaulted this claim to the extent it relies on due process, his privilege against self-incrimination and the work-product doctrine. Additionally, Hayes argues that the discovery order violated his right to the effective assistance of counsel guaranteed by the Sixth Amendment.

Prior to trial, the State filed a motion to discover any potentially impeaching material contained in the notes of the investigator retained by the public defender. After argument, the trial court ordered the defense to disclose "only verbatim statements made by witnesses for the State to the defense investigator which contradicted statements those witnesses previously made to the police and the prosecuting attorney." *Hayes*, 564 N.E.2d at 813. This order, Hayes argues, effectively turned his investigator into an arm of the State. He contends that he was prejudiced because the State was able to direct its witnesses to give vague answers when cross examined at trial.

The Illinois Supreme Court held that "the [discovery] order did not deprive the defendant of

the effective assistance of counsel." *Id.* at 814. The court noted that it is improper to require the defense to disclose inculpatory material uncovered by the defense. *Id.* In addition, the court observed that communications between a criminal defendant and his attorney must be protected from discovery pursuant to the Sixth Amendment's assistance-of-counsel guarantee. *Id.* However, the court held that in this case, the discovery order did not require the disclosure of inculpatory material or protected client-attorney communications. Finally, the supreme court stated that the discovery order was narrowly tailored to require the disclosure of "only those statements made by State witnesses to the investigator which impeached statements those witnesses had already made and which were of record in police reports, transcripts or prosecution summaries." *Id.* Hayes was required to disclose only those statements of witnesses to the investigator that "could fairly be said to be the witnesses' own words." *Id.* Finally, the court noted that even if the court assumed, *arguendo*, that the discovery order was improper, Hayes was not prejudiced by it because: (1) Hayes did not fully comply with the order and failed to turn over contradictory statements made by Harold Smith to the investigator; and (2) Larry Stewart testified at trial that he did, in fact, tell police that the assailant had a pockmarked face. *Id.* at 815. Therefore, the court held that the discovery order did not violate Hayes's right to the effective assistance of counsel. *Id.* at 814-15.

The Illinois Supreme Court's decision is not contrary to, nor an unreasonable application of, federal law. In *Weatherford v. Bursey*, 429 U.S. 545 (1977), the Supreme Court observed, in pertinent part: "[T]he Sixth Amendment's assistance-of-counsel guarantee can be meaningfully implemented only if a criminal defendant knows that his communications with his attorney are private and that his lawful preparations for trial are secure against intrusion by the government, his adversary in the criminal proceeding." 429 U.S. at 554 n.4. In this case, the Illinois Supreme Court

31

held that the constitutional guaranty was sufficiently implemented because the trial court's discovery order was directed only to comments made by third parties to the defense investigator. In no way was the communication between Hayes and his counsel compromised. This was a reasonable application of the *Weatherford* language, which was clearly focused on protecting attorney-client communications.

In *United States v. Nobles*, 422 U.S. 225 (1975), the defense intended to call its investigator to impeach the identification testimony of the prosecution's witnesses by testifying about his interviews with those witnesses. The trial court ruled that the investigator would not be permitted to testify unless the defense turned over his report, subject to *in camera* inspection and disclosure to the prosecution. In affirming the trial court's order, the Supreme Court initially noted:

> We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. To ensure that justice is done, *it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense.*

*Id.* at 230 (internal quotation marks omitted) (emphasis added). Ultimately, the Court held that the discovery order did not violate the Fifth Amendment's privilege against self-incrimination, as it was directed towards the statements of third parties. *Id.* at 234. In addition, the discovery order did not violate the petitioner's Sixth Amendment rights because of the limited and conditional nature of the court's order. *Id.* at 240 n.15. In light of this Supreme Court precedent, the Illinois Supreme Court's decision was reasonable, especially in recognizing the limited nature of the trial court's discovery order. Furthermore, as this court has frequently discussed above, the numerous in-court

identifications of Hayes as the assailant convinces the court that any conceivable error by the trial court's discovery order was harmless. Therefore, Hayes's eleventh ground for habeas relief fails.

## I.     Ground Twelve: Grand Jury

Hayes next argues that his trial was unfair because the State "used the vehicle of the grand jury to obtain 'pre-trial' discovery from defense witnesses, but [Hayes] was not accorded reciprocal discovery of potential state witnesses." (Pet.'s Reply Resp.'s Answer at 35.) Prior to trial, the State called six of Hayes's family members to testify before the grand jury. The prosecutor told the grand jury that the witnesses would testify solely for informational purposes. Hayes argues that the State's only purpose for calling these witnesses was to record minor inconsistencies in their testimony for impeachment purposes, in case Hayes offered an alibi defense at trial. However, Hayes was unable to schedule a pre-trial interview with the State's four principal witnesses. He argues that this gave the State an unfair advantage over the defense. He also claims that the State's abuse of the grand jury procedure forced him to abandon his alibi defense.

The Illinois Supreme Court held that the prosecutor did not act improperly in calling five of Hayes's family members to testify before the grand jury on the day that the grand jury returned a true bill against Hayes. *Hayes*, 564 N.E.2d at 815-16. The court noted that the witnesses, in fact, all testified that Hayes was at home watching the Memphis State basketball game between noon and 2 p.m. on the day of the offense. The court held that this testimony was necessary "so that the grand jury could ascertain whether the defendant had an opportunity to commit the crimes in question." *Id.* at 816. In making this decision, the supreme court cited *Branzburg v. Hayes*, 408 U.S. 665 (1972), for the proposition that the purpose of a grand jury's investigation is not only to prosecute the guilty, but also to protect the innocent from unfounded criminal prosecutions. *Hayes*, 564

N.E.2d at 815; *Branzburg*, 408 U.S at 688 ("Because [a grand jury's] task is to inquire into the existence of possible criminal conduct and to return only well-founded indictments, its investigative powers are necessarily broad."). The Illinois Supreme Court was not unreasonable in applying this law.

However, the Illinois Supreme Court agreed with Hayes that the State acted improperly when it called Hayes's mother to testify before the grand jury *after* the indictment against Hayes had already been returned. *Hayes*, 564 N.E.2d at 816. On the other hand, the court held that this error did not prejudice Hayes so much that he was entitled to a new trial, because his mother's testimony was substantially similar to the statements properly elicited from the five other family members. *Id.* In light of this and the overwhelming in-court identifications, this decision was not an unreasonable application of the *Brecht* harmless error doctrine. *See Anderson*, 227 F.3d at 898 n.3 (an error is harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict") (citing *Brecht*, 507 U.S. at 637).

Finally, the Illinois Supreme Court held that the trial court did not improperly deny Hayes's motion to depose the State's witnesses. *Hayes*, 562 N.E.2d at 816. It rejected Hayes's argument that the trial court's failure to provide reciprocal discovery violated due process and made the trial fundamentally unfair. *Id.* The court disagreed with Hayes's characterization of the grand jury testimony as "depositions." *Id.* In addition, it noted that State witnesses are under no obligation to be interviewed by defense counsel. *Id.* This decision by the supreme court was neither contrary to, nor an unreasonable application of, clearly established federal law. The Illinois Supreme Court Rules authorize taking a deposition of a witness in a criminal case only when there is a substantial possibility that the witness will not be available to testify at trial. *Id.* Hayes has made no argument,

34

and the court can find no indication, that these rules or the Illinois Supreme Court's decision was contrary to Supreme Court precedent or otherwise constitutes a constitutional violation. *See, e.g., Weatherford*, 429 U.S. at 559 ("There is no general constitutional right to discovery in a criminal case[.]"). Therefore, Hayes's twelfth ground for habeas relief fails.

## V.    Conclusion

For the reasons described above, Hayes's petition for habeas corpus is denied.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED:   May 22, 2003